May it please the Court, Matt Larson of the Federal Defender's Office for the Appellant, Mr. Lippitt. Your Honor, this case is about the basic right to put on defense. The district judge precluded Mr. Lippitt from even arguing to a jury that he had acted under duress, despite the fact that Mr. Lippitt met the minimum standard of making a threshold showing on each element of the duress defense. Well, how did he make the threshold showing on the third element? And that brings in, of course, the United States v. Wood case, and how do you distinguish it? Indeed, Your Honor. The third element is that there be no reasonable opportunity to escape the threat. Here there at least were three different bases that Mr. Lippitt identified in his declaration as to why he could not reasonably escape the threat. The first was the alleged complicity of the prison guards, and this is what distinguishes this case from Wood. Here the allegation was that Mr. Lippitt verified that his cellmate was in for a child sex offense by looking at documentation that was available only to the prison guards. He alleged in his declaration that he believed that the guards had been complicit in setting up the assault for the reasons that so-called chomos are just as despised by prison guards as they are by other inmates in a prison setting. Right off the bat, that distinguishes this from Wood. In Wood, there's no indication that the guards were complicit in the threat there. In Wood, it was a beef between one prisoner and four others. There was no suggestion that the guards had orchestrated the assault or would stand idly by and allow it to happen. Here there's indication in the record that the only reason Mr. Lippitt assaulted this person or one of the reasons Mr. Lippitt couldn't go to the guards is because the guards themselves were complicit in arranging this assault by placing the man in his cell in the first place, by providing documentation from a database that only they could access and that the prisoners could not. There's no such allegation in the Wood case of that kind of complicity. The Bailey case, Your Honors, from the Supreme Court in 1980 also implicitly makes clear that one need not go to prison guards when prison guards themselves are alleged to be part of the problem. In that case, the defendants had escaped prison, alleging that the guards there, some of the guards, had been setting fires in the prison and letting them burn and had been beating the prisoners. The Supreme Court certainly didn't say that under those facts, the individuals had to go to those guards for help before seeking to escape that threat. The second basis that Mr. Lippitt identified for not being able to go to the guards for help is the omnipresent danger of being labeled a snitch in prison. And for this, I would refer, Your Honors, to the Riff case from the Sixth Circuit. In Riff, the defendant there was an inmate, and he was charged with smuggling marijuana into the prison at the behest of an unnamed gang and with the implicity of a prison guard. There, the question was whether the individual had a reasonable opportunity to escape. He had been threatened with injury or death if he hadn't been helping them smuggle the drugs into the prison. He said, I can't go to the prison guards because if I do, I'll have to identify the people who are threatening me. And if I do that, I'm a snitch. I put myself in even greater jeopardy. The Sixth Circuit said, that's a question that should go to a jury. That's a question as to whether – But this isn't really a snitch situation. If he's snitching, he's snitching on the guards. Or he's snitching on the guy he doesn't want to beat up on in the sense of – he's not inculpating anybody except maybe the guards. Respectfully, Your Honor, it's also the other inmates. What other inmates? The other inmates in his prison. As he alleged in his affidavit, given the fact that this individual was assigned to his cell, was verified to be incarcerated for a sexual offense involving children, and had refused to check himself into protective custody, meant that Mr. Lippitt had to assault this man or be assaulted by other inmates. Yeah, but that sort of snitching is not – I'm not snitching on some individual. I'm just describing life in prison. If he snitched, he snitched on the entire prison population. This is what happens to people who do not behave in the way that I think I'm now supposed to behave. Well, if Your Honor – if I'm understanding Your Honor correctly, if you're implying that he could have gone to the guards without identifying the people who were threatening him and received – No, I'm saying a different thing. His argument – and I believe it, actually – his argument is, listen, if this guy's in my cell and I don't do anything about it, the prison code is I'm going to get beat up. And it doesn't even matter who it's going to be. I'm just going to get beat up. It might be Joe. It might be Fred. But that's just what happens. That's what he's saying. I think that's likely true. And, indeed, he knew from his prior experience it was true. Right. But what I'm saying is this is not your classic snitch situation where you say, well, you know, Joe did the following or Sam did the following. He's saying, listen, if I don't do this, I'm going to get beat up. It doesn't matter who it's going to be. This is just the way life is in the prison. So what I'm trying to say is this – it's hard for me to fit this into your classic snitch situation. In that situation, if he had gone to the guards and said, Your Honor, you know, I have to do this. I need help. It's possible and probably likely the guards would have said, well, pursuant to our policy, you need to tell us who these people are who are threatening you, and then we can protect you. That's where the snitch angle comes in. But even putting the snitch angle aside, there are still two other bases for why Mr. Lippitt had no reasonable opportunity to escape. The first I've talked about already, the alleged complicity, and finally is the solitary confinement angle. That was brought up in the Wood case. You know, the court said, well, you can check yourself into solitary confinement. There was no allegation in that case, let alone any discussion, of the conditions of solitary confinement. And here Mr. Lippitt said the conditions are very harsh, and in fact, the facts bear out that solitary confinement involves 23 hours a day of isolation, and multiple studies have shown the devastating psychological effects of this. You don't think the butt-kicking he gave the inmate was pretty harsh? Indeed it was, Your Honor. I mean, it wasn't just a simple assault. He didn't just punch him once or twice to say, okay, I assaulted you, I'm safe now. He'd beat the living crap out of the guy. The individual was severely assaulted. There's some indication in the record that Mr. Lippitt stopped his confederate from continuing the assault, but I don't dispute the fact that this was a severe assault, and we don't dispute that here. The question is whether Mr. Lippitt should have been able to make an argument to the jury that the only reason he committed this severe assault was because of the duress that he was acting under. Because he might get assaulted. Indeed, or worse. Severely assaulted, severe physical injury or death. And yet he said, you know, the retribution, it would be severe and swift physical retaliation. It would be very quick. He had seen it happen before from his years in prison. He knew the threat to be real. The government really doesn't contest that. And he then laid out the three different reasons as to why he, in his mind, did not think it was reasonable to appeal to the guards for help. And again, certainly thinking of the Kuwak decision from earlier this year, Your Honors, and the Contento Pachon decision, when those individuals were at liberty and allegedly acted under duress over a series of different countries, and over the course of several years, the court, this Court, held in those cases that they had made a minimum showing that they had no reasonable opportunity to escape. Here, this is a much easier case. Mr. Lippitt is confined in a Federal prison, 24 hours a day, living side by side with the people who are going to severely injure him if he doesn't do what they say. He had no reasonable opportunity to escape. He couldn't have moved his family away, as was alleged in the other two cases. And even if he could, in those cases, this Court said, those individuals were not required to move their families away. That might not be a reasonable opportunity to escape. The question of reasonableness, Your Honors, is for the jury. If there are no more questions, I'll reserve the balance of my time for rebuttal. May it please the Court, Nicholas Drutanich on behalf of the United States. The crux of the defendant's appeal in this case is that because he was in prison when he patiently hunted the victim, and then violently assaulted that same victim, the Court should afford this defendant more leniency for the rest of his life.   When he's attempting to establish a prima facie case of duress prior to trial, and if the Court looks at the defendant's proffered declaration in this case, I submit to the Court that if it does that, just like the district court, if it's carefully analyzed, that does not rise to the level of establishing each individual element of duress as a matter of law. So where's the declaration we're supposed to look at carefully? Your Honor, that's in the sealed excerpts of record, and it is the first few pages, so from 10 to approximately 15. Okay. And throughout my argument, I'll make certain references to that excerpt of record. But if it's sealed, we've not sealed the courtroom. I got it. Oh, it's actually been unsealed by the Court. We filed a motion with the government, or with the Court. And additionally, Your Honor, if the Court were to permit this particular defendant to put the facts in the declaration before a jury, this Court would not only be turning its back on established precedent and would, but it would also implicitly be encouraging violent retaliatory assaults in prison where a defendant... Yeah, but if we don't allow the defense, we're encouraging the guards to set up whoever they don't want, whoever they don't like, by putting a child molester in the cell with them. And then when the person who's received this child molester in the cell does the predictable, which is to beat him up, well, then we've got a criminal case. So there's no good way out of this one. Your Honor, I understand. And maybe I can address the Court's concern about the complicity of the guards. And that goes to the reasonable opportunity of this particular defendant to escape. And in this case, the defendant had over 24 hours to escape what he perceived as a threat. And just like the defendant in Woods, he can't persuasively argue... How did it happen that the victim here ended up in the general population? Your Honor, it's the... I believe there's evidence in the record that it's a particular inmate's choice. And so whether or not he goes into segregated custody or whether he goes into general population, in this case, the victim chose to go into general population and promptly was put into segregated custody by the defendant's actions in this case. And with respect to complicity, I would just point the Court to sealed excerpt of record page 11 and page 12, where the defendant in this case doesn't say every staff member was complicit. He doesn't make that allegation. He had 24 hours. Instead, he says a good number, I think is the quote that he uses, or he says that some staff members. Well, in this case, unlike any other case that I've seen in this circuit or any other circuit on the duress issue, the Court has the unique opportunity to look at the crime as it's happening. And in excerpts of record, government's excerpts of record number 26, the government submits a DVD to the Court of the assault. And I think if the Court looks at that DVD, setting aside the 24 hours before the assault actually occurred and focusing in on the two minutes before the assault occurred, you'll see, the Court will see that this particular defendant was standing next to the victim, standing next to an exercise cell where there was no video cameras, where another defendant was lying in wait inside. And the Court will see that on that video camera, that there's a correctional officer right there with an earshot of the defendant. The defendant doesn't say, hey, correctional officer, I've got a threat against me. He doesn't punch the victim right in front of the correctional officer so the correctional officer can deal with it. What he does is he sits against the rail talking to the victim until the correctional officer walks off the floor. Once that happens, within 30 seconds, the defendant turns and pushes this victim into the exercise room outside of cameras and assaults the victim for two minutes, breaking his jaw, his orbital socket, his ribs, causing severe lacerations to his face. And so it's the manner in which he did it. He didn't just punch. Here's what's troublesome about this case, and troublesome in both directions. There is such a thing as duress. It may very well be that he felt himself and reasonably felt himself to be in substantial danger because this man had been placed in his cell. It's also possible and certainly consistent with what he's saying is that the guards set him up. But he also is not sure who among the guards set him up. Like, what guard can he go to? So this is not relevant to go to the jury. So a jury can decide, were you really under duress? Did you really have no choice as to what you were supposed to do? I have to say, this one's really troublesome. I hate the idea that child molesters are in such danger. If we say that a duress defense is possible, it may just turn into an open season on child molesters in prison. I mean, either side of this is awful. But I'm having trouble seeing why there's no possibility of a duress defense such that he should be entirely foreclosed from presenting to the jury. And I believe, if I can focus on really the issue, I also believe that the immediate threat element must be addressed. But I believe the Court's question as to no reasonable opportunity to escape, I think I can focus in. This Court has looked at, in prior cases, the Janell case out of this Court, starting with the J, that the prior criminal history of a defendant might be relevant in establishing whether or not there's a reasonable opportunity to escape. And I know we're delving into the facts, and we need to assume that they're true. But just on its surface, Your Honor, this particular defendant has an armed robbery conviction. He has a burglary conviction. He has another assault on a purported child molester in prison. This particular defendant states in his declaration that he associates with other Anglo inmates, primarily. This is the type of conduct that this particular defendant, I'd submit to the Court, enjoys doing to inmates. And I think there's reason before there's a case that this Court has decided where they point to a prior drug conspiracy conviction and find that that's relevant in examining directs. But also why isn't this something that the jury gets to hear? No, I understand. I understand, Your Honor. And I believe the reason. I believe the reason is because you can, based on what has been submitted in his declaration, Judge Fease was correct. There's just, he just doesn't get there. And here's another example. Where is it in the record where this victim signed off to be placed in the general population? Your Honor, if I may. I don't have it at my fingertips, Your Honor. I know that fact to be true, and I know that fact because I was a trial attorney. I believe it's in the record, but I can point to the Court with that fact after this hearing with a letter. I think we also know that if you take someone who's a child molester or there are other kinds and you put them in the general population, you're putting their lives at risk. We know that. The prison people know that. Yes, Your Honor. Why would they allow him even to sign off to go into the lion's den, huh? Let me address that. I mean, that's hard to understand. It is the individual inmates. This is Lompoc. This is a Federal prison. Yes, Your Honor. It's not other prisons we have around here. And I don't even know if Lompoc is crowded or not. I mean, it's the place where prisoners like to go because it's such a nice place. But it's just hard for me to understand why somehow he got into prison with this fellow who seems to be one of these white supremacists. And right away, he's assaulted. And right away, this fellow knows, the defendant here knows his background. A few points on that. Correctional officers were informed that this particular victim was put into this defendant's cell and promptly, before the defendant even returned from work in the prison that day, promptly removed the victim from his cell. So to the extent that there may have been. After he was beaten up. No, no, before. Before, Your Honor. Actually, a full 24 hours before. Yeah. They moved him. So they put him in there and then they heard he may have, there may be an issue with this particular defendant and this particular victim. And so they moved him. Why would they know that in advance? Your Honor, that's a good question. But they did it, they remedied it. And they remedied it before the defendant even got back. And I would also point to the Riff case, which is a Sixth Circuit case. And counsel mentioned it in his argument. Let's talk about this case. Well, I believe that the, this goes to whether or not segregated custody is, was an option for this particular defendant. And whether or not segregated custody should. I'm talking about the victim. Well, segregated custody, so what the defendant did by, and he's put in his brief how horrible segregated custody is. He said that he, by no means does his client, does the defendant want to go there. Well, what the defendant effectively did was foisted the, the inconveniences of segregated custody on this victim by assaulting him. So he made a lifestyle choice. And that lifestyle choice was assault the victim or live in segregated custody. And he wasn't willing to live in protective custody or segregated custody, so he assaulted him. And I point the court to the sealed excerpts of record where he says, this particular defendant says, nor could I place myself in protective custody, which would permanently affect my housing, my placement, and my personal liberty. He didn't want to go there because it's, it's hard time. And that's for the same reason that the victim didn't want to go there in this case. But he was put there by the defendant. So, so the, the fact that the victim chose a general population shouldn't be used against this particular victim. What should, what the issue is, is whether the defendant in the hour, in the 24, over 24 hours before the assault took place, whether he had a reasonable opportunity to say, hey, this, I'm getting, I'm getting what I think is a threat, or I'm scared. Can I go in? Can I go into segregated custody? And he didn't do that. And, and it's even more relevant to look at the few minutes after the assault. And I think when juxtaposed with Contento Pichon, where it's a continuing offense, and that individual decided to consent to an x-ray, he had the balloons in his stomach, and at the port of entry, I believe it was the airport, he consented to an x-ray. The court said, well, he did reasonably, he did at the first opportunity decide to, decide to come to law enforcement. Well, in this case, when the threat had been purged, after he beat the victim within an inch of his life, he didn't go directly to the correctional officer that just left and say, hey, I actually, I assaulted the victim, and I need to be put in the segregated custody and served my punishment. What did he do? Go take a shower. He went and took a shower, Your Honor. That's correct. And he threw his bloody clothes and his bloody boots into a trash can. But then when they asked him, he admitted everything. Right. But the point is, this case is distinguishable from Contento Pichon, where it's a continuing offense, and they didn't catch him red-handed. He had balloons in his stomach, and I think that goes to whether or not there was actually duress. It goes to whether or not there was a reasonable opportunity to escape. And I believe that in analyzing that element, there just isn't enough, and that's especially true with the video. Now, with respect to the immediacy, and I know that I'm well over time, but with respect to the immediacy argument and that element, I believe what the court was asking about, whether it was a classic snitch case, I think that what the court's getting at, and if I'm wrong, I apologize, but what came to mind was that this was a vague third-party threat. In every case that I see, whether it be Contento Pichon, whether it be Kwok, whether it be Riff, whether it be Becerra, and Wood, there's some type of identifiable threatener. This is just, he's pleading a culture of fear in prison because I was generally afraid the second element, the first element is met. He, there's no dispute that prison's a dangerous. I sure would be an awful lot happier if you just let the, you know, put this in front of the court instead of having this on appeal. Well, Your Honor. Because I don't think Judge Feist said on his own, I'm keeping this out. You asked him to keep it out, didn't you? That's correct, Your Honor. And you've got a pretty good argument as to why we don't really meet duress here. I believe. It doesn't seem to me open and shut. I mean, I think you've got a pretty good argument. On the facts, I probably would agree with you were I a juror. So why did, why were you so unconfident of your response to his duress defense? You wouldn't even let him put it in. Well, Your Honor, with that, with that, I wasn't unconfident of the case. Well, then, so why didn't you just let him put it in? The fact is. To save you the trip up here. Yes, Your Honor. Yes, Your Honor. As a matter of law, the problem is, is that a matter of law, I didn't believe sitting in my seat in the trial court. I didn't believe that he got there. And the court agreed with me. And I'll just. But you didn't even know about what at that point. You're right, Your Honor. I didn't. Sorry, I couldn't help it. Thank you. Thank you, Your Honor. And it's such a good case, you never cited it below and you never cited it in. How does that happen? With all due respect, how does it happen? I missed it, Your Honor. And I apologize to the court for doing so, and I did miss it. But with respect to whether or not it should, whether or not there should be an evidentiary hearing or whether or not there is, whether or not this should be going down to trial, a trial court again, I would just submit that the defendant never asked for an evidentiary hearing below and over the government's objection submitted his declaration in camera. It wasn't until February 1, 2012, when he filed his appeal brief, that I actually got to see it. I asked for that down below. I didn't ask for it, but I did object to it and I wanted to see it so that we could challenge it and figure it out at the district court. And it didn't happen. And with that, Your Honor, unless there's a question from the court or anything else that I could help with. I still don't understand, you know, why the prison guards put this victim in the general population. Are you telling me that the other alternative was to put him in solitary confinement? What it's called, Your Honor, is... Is that right? What it's called is segregated custody. And yes, that's what... I've been through all these prisons. You know, I've visited them. So I've been over to Terminal Island. So you're telling me that if you get a sex offender in there, they either go into the whole or they go into the general population? Correct. Are you telling me? Yes, Your Honor. In this... Yes, Your Honor. That's exactly what I'm telling you. That's the general practice. That's the general practice. There are, however, and this is outside of the record, but for the court's information, there are, however, certain prisons that are low-risk prisons that I believe some of these child molesters or child porn possessors would be able to serve their time in. Well, yeah. Actually, under the BOP policy, they're not allowed to go to the minimum security prisons because even defendants who just view child porn on the Internet are deemed public security risks. So they're excluded from prison camps, for example, but they can go to low- and medium-security facilities. Woods and BOP policy. So thank you, Your Honor. I appreciate it. With that, Your Honor, if there's any other questions, I can answer it. Otherwise, the government would submit on the case. Could you let the clerk here know where in the record this consent form is, that the victim signed to be placed to the general population? And, Your Honor, if it is in the record, I will let the court know. It also might just be my memory from investigating the case with the agents, but I will let the court know. Thank you. Well, I mean, but you said that he signed something. Well, I don't know the processing of whether or not he actually signed something. I believed that there were reports attached to my sentencing. That's what I was looking for when the court asked. Reports from the prison attached to my sentencing position paper with respect to his prior assault, and I believe this assault, and it just wasn't at my fingertips. And I think it's in the record, but if it's not, I will certainly let the court know. You're talking about his prior assault. You're talking about the defendant's prior assault? Yes, Your Honor. I'm talking about the victim's request that he be placed, that the victim be placed in the general population. Yes, Your Honor. If it's there, I will let the court know. If it's not, I will let the court know. All right. Good. Thank you. All right. Your Honors, I think as Judge Fletcher's comments reflected, a lot of what government counsel has been arguing in the briefs and here are the merits of the duress defense, and there are arguments that need to be made to a jury. The question on this appeal, as Your Honors are aware, is very basic. Did Mr. Lippitt make the minimum showing, the threshold showing, and the low showing of stating facts which, if believed to be true, made out a duress defense? It's then a question for the jury to decide whether Mr. Lippitt establishes that defensive trial, and everything government counsel said in his briefs and here are arguments he's free to make on remand at the trial. The legal question here is whether Mr. Lippitt's made out the very basic showing that the law requires, and the answer is plainly less, plainly yes. Well, it's not so plain to me, but let me ask you this. If simply not wanting to go into segregated custody is sufficient to trigger the third element, then you'd have a duress defense every time an inmate assaulted another inmate, wouldn't you? A couple things, Your Honor. Yeah. First, as you're aware, that wasn't the only basis for why he said he couldn't go to the guards for help. Secondly, if it was enough in Contento-Pachon and Kuok that the individuals there were not required to move their families to another location, then certainly it's not a requirement here that Mr. Lippitt subject himself to 23 hours a day of solitary confinement. The question whether that's a reasonable route of escape for him is a question for the jury. It wasn't a question for Judge Feist to decide. It wasn't a question for him to say, the jury hears no evidence, we're not going to hear your experts, we're not going to hear the prison guard who can corroborate your story, we're not going to hear from other inmates who can corroborate your story, we're just going to preclude this outright. You don't get to defend yourself. You're essentially convicted because we say so, because we've charged you with this offense and you happen to be a prisoner. Now, the Bailey case makes clear, the Riff case makes clear,  when part of your argument is that the prison guards are part of the problem. As Judge Pragerson has recognized, there's something troubling about this case. Why was someone who's so clearly at risk in general population placed there? Why does a printout from a prison guard database wind up in the hands of a prisoner, indicating that his cellmate is there for a child sex offense? Judge Feist himself recognized that it was troubling, that there was alleged complicity here. And he said, you know, I'm going to preclude this defense, but I'm giving you the conditional guilty plea because I want the Ninth Circuit to decide and I might be wrong. And he was wrong, Your Honors, in this case. The government talks a lot about how, you know, well, Mr. Lippitt had 24 hours, you know, in which he could have gone to the guards. At the end of the day, the government never disputes that Mr. Lippitt's position is that I could not go to the guards, and there are three reasons why I couldn't, complicity, segregation, and the snitch problem. Much less than that was alleged in the Contento, Bachon, and Kuach cases. But he had nobody to snitch on because it was this, I think, very real but generalized threat. I mean, he didn't know who was going to assault him. So it's not like he's snitching on, you know, John Gotti. He's just saying, you know, if I don't assault my cellmate, I'm going to be injured. So he's not really snitching on anybody. And according to you, it's such a well-known policy that the guards do it anyway, so where does the snitching come into play? Just to clarify, it may well be that, in fact, Mr. Lippitt knows who the particular person was who would have enforced this against him. And the fact that he did not identify that person by name in his declaration goes to why he's arguing duress in the first place. But that's not on the record. Indeed, Your Honor. I'm suggesting it. But at the end of the day, if Your Honors are uncomfortable with the snitch basis, then throw it out. If he's seeking protection against himself being assaulted, I think all he needs to do is to say to the guards, listen, I'm going to get beat up because I've had this child molester in my cell. In order for the guards to evaluate the realistic, whether that threat is realistic, they don't need the name of the guy. Fair enough, Your Honor. And number one, the guards may say, yeah, we know, we don't care, we put him in there for a reason. Number two, they'll say, okay, fine, go to 23 hours a day solitary confinement. That might not be a reasonable option for Mr. Lippitt. It may not be a reasonable option for him, but if we determine as a matter of law it's reasonable, then there is no reason to submit a duress defense to the jury. I would respectfully say, Your Honor, that Bailey precludes that. If this Court were to hold that whenever a prisoner says that he's acted under duress in the context where the guards may have been implicit, that this individual is then required to go into solitary confinement and subject himself to that 23 hours a day of isolation, potentially for years, potentially for the rest of his term, if this Court were to hold that an individual is always required in the circumstances to do that, this Court would be effectively precluding as a matter of law the duress defense for any Federal prisoner. This duress defense, in effect, is a challenge to the way our Federal prisons are operated. It reflects systemic problems, Your Honor, yes. The situation that Mr. Lippitt was in, as Judge Feist recognized, was an impossible situation. He's set up to attack his cellmate. The people who live around him 24 hours a day are ready to attack him if he doesn't. And he has no reasonable way, according to him, to escape this. When he's charged with the assault, all he wants to do is tell his story to a jury, put the facts of his case before them, and let them decide whether he, in fact, acted under duress or not. That's all he's asking for. And I suppose it's reasonable to assume that when the correctional officer put the victim in with the defendant, that the person who made the assignment knew or should have known the background of this defendant. So anyway. Absolutely, Your Honors. As Judge Fletcher mentioned, it is a troubling case. But at the end of the day, the question here is, does this person get to defend himself at trial? That's the question. And the law says yes. All right. We're going to take a brief recess.
judges: Bennett, Pregerson, Fletcher